# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| VONNETTA SPRAGGINS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civ. No. MJM-22-1546 |
| v. | * | |
| | * | |
| VERIZON SERVICES CORPORATION, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Vonnetta Spraggins ("Plaintiff") filed this civil action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*,[1] against Verizon Services Corporation ("Verizon") alleging failure to accommodate, retaliation, and hostile work environment. ECF No. 8-1 (Am. Compl.), ¶ 1. This matter is before the Court on Verizon's Motion for Summary Judgment, ECF No. 84; Plaintiff's Motion for Extension of Time to File Sealed and Unsealed Exhibits, ECF No. 95; Plaintiff's Motion to Supplement Exhibits, ECF No. 96; and Plaintiff's

---

[1] The header of Count III in Plaintiff's Amended Complaint, her claim for hostile work environment, includes a reference to Title VII, but that count makes no reference to race, sex, or any other class protected by Title VII of the Civil Rights Act of 1964. Furthermore, neither of Plaintiff's administrative charges of discrimination allege discrimination based on race, sex, or any other Title VII-protected category. *See* ECF 64-1 at 3-4, 10-12. The administrative charges allege discrimination on the basis of disability and retaliation only. *Id.* Accordingly, any Title VII claim Plaintiff intends to assert must be dismissed with prejudice for failure to state a claim and failure to exhaust administrative remedies. *See Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149–50 (4th Cir. 1999) (dismissing Title VII retaliation claim where plaintiff "failed to exhaust her administrative remedies before the EEOC"); *Grant v. Baltimore Police Dep't*, Civ. No. RDB-21-2173, 2022 WL 1321593, at *5 (D. Md. May 3, 2022) (dismissing race and gender discrimination claims with prejudice where plaintiff's administrative charges of discrimination "could have put [employer] on notice" of such allegations).

Motion to Seal Exhibits, ECF No. 97. The motions are fully briefed and ripe for disposition. No

hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

For the reasons set forth below, the Court shall grant Verizon's motion, ECF No. 84, and

enter summary judgment in favor of Verizon on all counts of the Amended Complaint. The Court

will also grant each of Plaintiff's motions for extension of time, ECF No. 95, and to seal exhibits,

ECF No. 97. However, the Court will deny Plaintiff's motion to supplement her sets of exhibits

after briefing closed on Verizon's summary judgment motion. ECF No. 96.

## I.    BACKGROUND

### A.  Factual Background

Plaintiff began her employment with Verizon as a Central Office Technician ("COT") in

October 1999. ECF No. 84-5 (Def. Ex. 2, Spraggins Dep.) at 14:4–18. In her position, Plaintiff

"worked on a computer as a part of a team of COTs in a network operations center responsible for

assisting technicians out in the field to ensure reliable operation of the network and to address any

service outages, including calling different centers to dispatch technicians, taking calls from

technicians in the field to restore service, and completing service tickets." ECF No. 87-2 (Def. Ex.

3, Robinson Decl.), ¶ 4. The essential job functions of a COT include:

> (1) working with field technicians that utilize complex testing
> devices while trouble shooting and installing services; (2) contacting
> customers (internal and external); (3) working onsite in an open
> office environment at a computer terminal for extended periods of
> time; (4) operating and maintaining Verizon's legacy systems as
> well as its next generation technologies, (5) contacting Verizon's
> external and/or internal customers, and (6) availability to work
> scheduled tours designated by the CBA and/or needs of the business.

*Id.*, ¶ 4, at Ex. A.

At some point during her employment, Plaintiff was diagnosed with migraines "caused and

aggravated by visual stress and mental stress. They are exacerbated and aggravated by bright

overhead lights, bright computer screens, loud noises, and certain smells." ECF No. 93-2 (Pl. Ex. 3).

Plaintiff went out on short term disability ("STD") leave from July 10, 2016, through May 27, 2017, due to pain, numbness, and tingling from her right hand all the way up to the right side of her neck, which prevented her from sitting and typing. ECF No. 87-1 (Def. Ex. 1, Miller Decl.), ¶¶ 11, 12; ECF No. 85-2 (Miller Decl. Sealed Exhibits), Ex. F. While Plaintiff was out on leave, a psychiatrist performed a psychiatric independent medical exam ("IME") on Plaintiff and found that she suffered from major depressive disorder and anxiety disorder, and, for medical reasons, could not return to work as a COT, even with restrictions. ECF No. 87-1, ¶ 12; ECF No. 85-2, Ex. G. In February 2017, a second psychiatrist performed a psychiatric IME and concluded that Plaintiff could not return to work as she was still totally disabled. ECF No. 87-1, ¶ 13; ECF No. 85-2 at Ex. H.

During her STD leave, Plaintiff applied for a different COT position in Silver Spring, Maryland, through Verizon's associate staffing process. ECF No. 87-1, ¶ 11, Ex. E; ECF No. 84-5 at 32:15–19. Plaintiff asserts that she requested this transfer to remove herself from a hostile work environment in Ashburn and in the hopes of receiving workplace accommodations in Silver Spring. ECF No. 84-5 at 32:20–33:4. In May 2017, Plaintiff was medically released to return to work from STD leave, and Verizon offered her the position in Silver Spring, conditioned on her successfully completing the position's training and testing requirements. ECF No. 87-1, ¶ 14.

Plaintiff began her new position in or around June 2017 and reported to Donald Matthews. ECF No. 84-5 at 40:6–41:2. In June 2017, Plaintiff explained to a supervisor that she was to receive accommodations for her light sensitivity, and Verizon approved and expedited the supervisor's request to accommodate Plaintiff by altering the lighting in the Silver Spring office. *Id.* at 46:12–

47:17, Ex. 5. Around June 7, 2017, Verizon installed light filters above Plaintiff's cubicle. ECF No. 84-5, Ex. 5. When Plaintiff was transferred to Silver Spring, she underwent additional training. *Id.* at 41:20–42:3. Plaintiff explained that the lights in the training room bothered her, but the lights were out most of the time during training, and when she requested that a light be removed, Verizon accommodated. *Id.* at 42:11–43:10. Plaintiff eventually failed the test for the position in Silver Spring. *Id.* at 250:4–16.

On or around August 9, 2017, Plaintiff submitted a partially completed accommodation request form in which her health care provider indicated that "overhead lights [and] visually focusing on a computer is a problem for long periods of time and both will cause a migraine[.]" ECF No. 85-3 (Spraggins Dep. Sealed Exhibits), Ex. 6. The provider requested that Plaintiff receive (1) leave for doctor's appointments and one to three days of leave if a migraine occurs; (2) a closed office space or work from home so that she could control the lighting; and (3) self-paced work to decrease stress levels. ECF No. 84-5 at 49:16–57:1; ECF No. 85-3, Ex. 6. The form was missing Section 1, page 6 of Section 4, and Section 3, a medical authorization form permitting Verizon to contact Plaintiff's health care provider. ECF No. 87-1, ¶ 15. Verizon's Workplace Accommodations Team ("WPAT") twice reached out to Plaintiff requesting that she provide the missing sections of the form, including a signed medical authorization form. *Id.* ¶ 16.

Between August 23 and September 1, 2017, Plaintiff and WPAT exchanged emails about Plaintiff's accommodation requests, and WPAT continued to request the missing sections of her form. *Id.* ¶¶ 17, 18; ECF No. 85-2, Ex. I; ECF No. 91-10 (Pl. Ex. 15). Plaintiff asked to work from home or in a space where she could adjust the lights. ECF No. 85-2, Ex. I at 10. Verizon responded that it could not turn the lights off or provide a private office, but that Verizon would install light filters and provide anti-glare screens. *Id.* at 8–9. WPAT also offered to allow Plaintiff to wear a

hat and sunglasses, which she rejected. *Id.* at 7–9; ECF No. 85-2, Ex. J; ECF No. 87-1, ¶¶ 17, 18. Turning off the lights was not feasible because it would affect the entire floor, and providing Plaintiff a private office was not feasible because of the collaborative nature of her job, and because Plaintiff had been disciplined previously for sleeping in a room with the lights off. ECF No. 87-1, ¶¶ 17, 18; ECF No. 85-2, Exs. I, J, K. Verizon did install light filters and anti-glare screens in Plaintiff's workspace. ECF No. 87-1, ¶¶ 19, 20; ECF No. 85-2, Ex. I.

Plaintiff was out on SPD leave from September 6 through November 2, 2017. ECF No. 87-1, ¶ 21. Then, instead of returning to work, Plaintiff used contractual excused days until November 16, 2017. *Id.* During her SPD leave, on October 3, 2017, WPAT reminded Plaintiff that she still had not provided the missing sections of her accommodation request form and that she needed to provide that information by October 16, 2017, or Verizon would close her request. *Id.* ¶ 22; ECF No. 85-2, Ex. I. Plaintiff failed to meet that deadline, and on October 25, 2017, WPAT informed Plaintiff that it was closing her request but would reopen it if she provided the requested information. ECF No. 87-1, ¶ 23; ECF No. 85-2, Ex. L.

Upon returning to work on November 16, 2017, Plaintiff failed to report to her desk; instead, she went to another room without notifying her supervisor and remained there until approximately 12:30 p.m. ECF No. 84-5 at 63:12–71:14; ECF No. 85-2 at Ex. M; ECF No. 85-3 at Ex. 9. Plaintiff's supervisor instructed her to return to her desk and perform work, but she failed to comply with that direct order, and he later found her outside the restroom talking on the phone. ECF No. 84-5 at 63:12–71:14; ECF No. 85-2, Ex. M; ECF No. 85-3, Ex. 9. Verizon issued Plaintiff a three-day suspension for her actions, from November 22 through 24, 2017. ECF No. 85-3, Ex. 9. On November 16, 2017, Plaintiff and WPAT continued their dialogue about Plaintiff's

accommodation request, and the parties disagreed over Plaintiff's failure to provide a medical authorization release form. ECF No. 85-2, Ex. L; ECF No. 91-11 (Pl. Ex. 16).

Plaintiff retook the COT assessment on November 20, 2017. ECF No. 87-1, ¶ 27; ECF No. 85-2, Ex. P. During the assessment, when Plaintiff said she was getting a migraine, Verizon gave her an additional 30 minutes to complete the assessment and turned off the lights in the assessment room. ECF No. 84-5 at 250:4–251:12, 283:1–284:10. Plaintiff again failed the assessment and was returned to her former COT position in Ashburn. ECF No. 87-1, ¶ 28; ECF No. 85-2, Exs. Q, U.

On November 20, 2017, Plaintiff emailed WPAT requesting 45 days off and indicating issues with the light filters and anti-glare screen she had been provided. ECF No. 87-1, ¶ 26; ECF No. 85-2, Ex. O. On November 22, 2017, while Plaintiff was suspended, WPAT sent her a letter reiterating the accommodations already provided, again requesting that Plaintiff provide a medical authorization form (using either Verizon's form, the STD vendor's form, or Plaintiff's provider's form), and emphasizing that failure to provide the signed authorization would prevent the interactive process from continuing. ECF No. 85-3, Ex. 10; ECF No. 87-1, ¶ 29.

After her three-day suspension, which ended on November 24, 2017, Plaintiff took an additional two days of vacation and returned to work on November 29, 2017. ECF No. 85-3, Ex. 14; ECF No. 85-2, Ex. N. Plaintiff was directed to perform work on service tickets, which she stated she could not do because her computer screen was too blurry. ECF No. 85-3, Ex. 14; ECF No. 85-2, Ex. N. Verizon suspended Plaintiff for the rest of the day for failing to follow a direct order from her supervisor. ECF No. 85-3 at Ex. 14; ECF No. 85-2 at Ex. N. Plaintiff returned to work the following day, November 30, 2017. ECF No. 85-2, Ex. N. She continued to disregard her supervisor's instructions to perform work, and she was suspended again—this time for 11 days. ECF No. 87-1, ¶¶ 30–31; ECF No. 85-2, Exs. R, S. After that suspension and an additional half-

day of vacation leave, Plaintiff returned to work on December 18, 2017. ECF No. 87-1, ¶ 31; ECF No. 85-2, Ex. S. That day, WPAT informed Plaintiff that her accommodations request was closed because she failed to provide a medical authorization form. ECF No. 85-3, Ex. 11; ECF No. 84-5 at 73:13–76:3. The following day, on December 19, 2017, Plaintiff again failed to perform any work, despite her supervisor's directive, and was suspended for another 20 days, from December 20, 2017, through January 16, 2018, as a final warning. ECF No. 85-2, Ex. T; ECF No. 91-14 (Pl. Ex. 19); ECF No. 85-3, Ex. 16. Plaintiff was scheduled to return to work on January 17, 2018. ECF No. 91-14.

During her suspension, WPAT sent a letter to Plaintiff, dated December 21, 2017, indicating that it believed Plaintiff had been provided effective accommodations, but in an attempt to provide further accommodations, WPAT enclosed a letter for Plaintiff to give her health care provider and asked that it be returned by January 16, 2018. ECF No. 87-1, ¶ 33; ECF No. 85-3, Ex. 12. On January 16, 2018, Plaintiff's heath care provider responded to WPAT's letter, suggesting alternative accommodations including: (1) working from home; (2) a closed office space where Plaintiff could control her surroundings; and (3) matte anti-glare screen covers. ECF No. 87-1, ¶ 34; ECF No. 85-3, Ex. 13. However, Plaintiff's health care provider noted that even with those accommodations, Plaintiff would need indeterminate leave of one to three days off per migraine episode, one to three times a month. ECF No. 87-1, ¶ 34; ECF No. 85-3, Ex. 13.

In Plaintiff's work performance evaluation for 2017, her supervisor gave her an overall performance rating of "Improvement Needed," indicating that she worked a total of 15 days during 2017 and performed only 19 functions. ECF No. 85-2, Ex. U.

On January 17, 2018, Plaintiff filed an administrative charge of discrimination alleging disability discrimination and retaliation. ECF No. 91-17 (Pl. Ex. 22). Instead of returning to work

on January 17, 2018, Plaintiff requested a leave of absence from January 17 through March 2, 2018, which Verizon granted. ECF No. 85-3 at Ex. 18; ECF No. 91-18 (Pl. Ex. 23). On February 27, 2018, while on leave, WPAT sent Plaintiff a letter informing her that, in accordance with internal rules, she was being returned to her former position in Ashburn and that she was expected to report to Ashburn on March 5, 2018. ECF No. 85-3, Ex. 20. The letter stated that, as an accommodation, Plaintiff's cubicle would be located in the darkest corner of the room, where overhead lights were turned off, and her computer would have an anti-glare matte screen. *Id.* WPAT further indicated that: (1) it could not provide a private office as none was available; (2) it could not permit Plaintiff to work from home, given the collaborative nature of her work, that system access is restricted to on-site employees, and that the operative labor contract did not allow remote work; and (3) it could not grant blanket advance approval for "unscheduled and unpredictable" absences up to nine days per month. *Id.*

Instead of returning to work on March 5, 2018, Plaintiff used paid and unpaid time off to remain out of work for all but one full day and four half-days from March 2018 through April 2018. ECF No. 87-1, ¶ 38; ECF No. 85-3, Exs. 21, 22. Plaintiff then went out on STD leave from April 2018 through March 5, 2019. ECF No. 87-1, ¶ 38. On February 14, 2019, while Plaintiff was out on STD leave, a physician performed an IME to determine whether she could return to work and determined that, although she may still experience periods of incapacitation, she could return to work on a reduced work schedule of three days a week—Monday, Wednesday, and Friday— for a period of three months. ECF No. 85-2, Ex. V. The physician also recommended that Plaintiff have a work environment where she has control of the overhead lighting, due to her migraines; and that she be permitted to work near the restroom and in Maryland rather than Ashburn. *Id.* On February 27, 2019, WPAT was contacted about Plaintiff's requests for several accommodations

8

upon her return to work, to include placement near a bathroom, control of overhead lighting, missing several days of work each month on account of her condition, and assignment to a location closer to her home in Maryland. ECF No. 93-9 (Pl. Ex. 28). On the same date, a member of WPAT responded that accommodations could be made to place Plaintiff near a restroom; that, although Plaintiff could not be in control of overhead lighting, she was already in a location where the overhead lights were off; and that the request to miss time from work could be accommodated. *Id.* On February 28, 2019, WPAT confirmed that Plaintiff would be seated within 60 feet of a restroom; was already placed in a rear, darkened cubicle with the overhead lights turned off; and would be provided matte, anti-glare screen covers. ECF No. 87-1, ¶ 40; ECF No. 85-3 at Ex. 26. However, WPAT told Plaintiff that it could not give her blanket approval for unscheduled absences for "several days" and that she could not be transferred to Maryland. ECF No. 85-3 at Ex. 26.

Verizon provided a negotiated benefit as part of a collective bargaining agreement that permitted employees to return to work from STD leave with a "partial day restriction" for up to 52 weeks with medical benefit coverage as a full-time employee. ECF No. 87-1, ¶ 8, Ex. C. Verizon granted Plaintiff's request for a partial return to work pursuant to this policy, scheduling her to work Monday, Wednesday, and Friday for (1) four hours a day from February 25 to March 24, 2019; (2) six hours a day from March 25 to April 21, 2019; and (3) eight hours a day from April 22 to May 20, 2019. *Id.* ¶ 41. On March 13, 2019, supervisors Michael Miller and Yamala Robinson received an email informing them that Plaintiff was returning to work on a reduced schedule. ECF Nos. 93-11 (Pl. Ex. 32), 93-12 (Pl. Ex. 33), 93-13 (Pl. Ex. 34). Instead of returning to work on her partial schedule, Plaintiff took vacation days each Monday, Wednesday, and Friday until April 15, 2019. ECF No. 87-2, ¶ 6, Ex. D. Thereafter, while in her reduced work schedule, Plaintiff (1) took vacation on Monday, April 29; (2) was suspended on Wednesday, May 1; Friday,

May 3; and Monday, May 6; (3) left three hours early due to illness on Wednesday, May 8; (4) left two and a half hours early due to illness on Friday, May 10 and Monday, May 13; (5) took vacation on Wednesday, May 15; (6) took four hours of vacation on Friday, May 17; and (7) took four hours of vacation on Monday, May 20. *Id.* ¶ 7, Ex. D.

As of April 2019, Robinson was Plaintiff's supervisor. ECF No. 91-1 (Pl. Ex. 1, Robinson Dep.) at 22:4–9. That month, Plaintiff received voice messages from Robinson and Miller stating that she was scheduled but failed to report to work on certain days, including a Tuesday, a Wednesday, a Friday, a Saturday, and a Sunday. ECF No. 91-21 (Pl. Ex. 36). On April 15, 2019, Robinson issued Plaintiff a disciplinary memorandum stating that Plaintiff was scheduled to work April 6 and 7, which were a Saturday and Sunday, but she failed to report. ECF No. 91-22 (Pl. Ex. 38). The memorandum also stated that Plaintiff failed to call and speak with a supervisor on April 9, which was a Tuesday. *Id.* Robinson explained that she, or another supervisor, would have called Plaintiff on April 6, 7, and 9 because the work schedule indicated that she was scheduled to work those days. ECF No. 94-2 (Def. Reply Ex. 2, Robinson Supp. Decl.), ¶ 7. On April 18, 2019, Robinson received notification of the reduced Monday-Wednesday-Friday schedule and managers were not to make calls to Plaintiff if she was not scheduled to work. *Id.* ¶ 8. The disciplinary memorandum issued for April 6, 7, and 9 was withdrawn. *Id.*

On April 21, 2019, Robinson's team, including Plaintiff, was transferred to Silver Spring. ECF No. 87-2, ¶ 8. The following day, Plaintiff exhausted the 52 weeks of her contractual "partial day restriction" benefit, and she was reclassified as a part-time employee. ECF No. 87-1, ¶ 42; ECF No. 85-2, Ex. W. On or about April 26, Plaintiff contacted WPAT requesting several accommodations, including: (1) working though her lunch hour to meet her 25-hour requirement, so that she would be benefits eligible; (2) having her work station changed because the lights over

the cubicle next to her were too bright and the noise level was too high; (3) matte, anti-glare screen covers for her computer monitor; and (4) monitor stands; or (5) in the alternative, a leave of absence. ECF No. 87-1, ¶ 43. WPAT responded that it would look into her requests. *Id.* On May 1, 2019, WPAT conducted an interactive dialogue with Plaintiff to discuss her seating and lighting accommodations and told her that if she could get clearance to work an additional hour from her doctor, she could work 25 hours but could not work through her lunch break. *Id.* ¶ 44; ECF No. 93-17 (Pl. Ex. 46).

On the same date, Robinson asked Plaintiff to provide a physical home address and updated telephone number. ECF No. 87-2, ¶ 9. Plaintiff initially refused to provide the information and was given 30 minutes to comply. *Id.* She continued to refuse, and Robinson suspended her for three days without pay for refusing a management directive. *Id.*; ECF No. 85-4, Ex. E; ECF No. 85-3, Ex. 27. On May 3, Plaintiff filed a complaint against Robinson with Verizon's ethics department, and that complaint was forwarded to a Human Resources representative on May 7. ECF No. 91-26 (Pl. Ex. 47). Plaintiff provided additional information about that complaint on May 8 and 9. *Id.*

On May 8 and 10, 2019, Plaintiff contacted WPAT to complain that lights in her view aggravated her condition, asking to be seated in a dark area and to be excused from work until she could be accommodated. ECF No. 85-2, Ex. X. On May 17, WPAT responded, in part, that Plaintiff could not be assigned to a private office but that they could consider a move to a location where light filters could be installed and the noise level could be reduced. *Id.* On the same date, Plaintiff replied to WPAT seeking clarification about restricting her work schedule, complaining that light filters aggravated her condition, asking to be moved to a location without overhead lighting, and requesting a headset with a band that goes behind her head. *Id.* According to Plaintiff,

11

Robinson directed her to request her preferred headset from WPAT, even though Robinson was ordering headsets for others on her team and had ordered the preferred headset for Plaintiff in the past.[2] *Id.*; ECF No. 87-1, ¶ 44.

On May 21, 2019, a manager in WPAT told Plaintiff, in part, that he would "follow up regarding the headset and the seating location and circle back." ECF No. 85-2, Ex. X. WPAT contacted Robinson, who clarified that (1) the entire team, including Plaintiff, had received headsets, but Plaintiff said the new one was too heavy and that the preferred headset she used in Ashburn was not compatible with the computer system in Silver Spring; and (2) the room to which Plaintiff wanted to be relocated was at the furthest point away from her team, and it was not reasonable to move her there, given the collaborative nature of the team's work and the inability to supervise Plaintiff in that location. ECF No. 87-1, ¶ 45; ECF No. 85-2, Ex. Y. On May 19 and 20, Plaintiff supplemented her ethics complaint against Robinson. ECF No. 91-26.

On May 21, 2019, Plaintiff was scheduled to return to a full-time work schedule, but she failed to show up for work or call out that day. ECF No. 87-2, ¶ 10. When Robinson called to check on her, Plaintiff explained that she was not coming into work because she had a medical restriction. *Id.* Robinson reminded her that the restriction had ended, but Plaintiff continued refusing to appear that day. *Id.*; ECF No. 85-4, Ex. F. Plaintiff reported to work the next day and met with Robinson and Miller about her failure to follow the proper call-out procedures. ECF No. 87-2, ¶ 11; ECF No. 85-4, Ex. G. Plaintiff explained that she knew the proper procedure for calling out, but she had a medical restriction. ECF No. 87-2, ¶ 11. Plaintiff was again informed that her restriction was over and, when asked who told her that the restriction was still in place, she

---

[2] In March 2016, while assigned to Verizon's facility in Ashburn, Plaintiff made a request to Robinson for a headset with a band that went behind her head. ECF No. 91-5 (Pl. Ex. 7). The requested headset was ordered in April 2016 and was provided to Plaintiff in June 2016. *Id.*

responded, "[d]isability." *Id.* Plaintiff subsequently failed to appear for work without calling out on May 25 and 26. *Id.*; ECF No. 85-4, Ex. H; ECF No. 91-25 (Pl. Ex. 41). On May 29, Robinson issued Plaintiff a written warning for failing to report for work without following call-out procedures, ECF No. 91-24 (Pl. Ex. 40), and on June 5, Robinson issued Plaintiff a disciplinary attendance plan to address her "no call/ no show" incidents, ECF No. 91-25.

Following her return to a full-time work schedule on May 21, 2019, Plaintiff's time away from work occurred as follows: she took three hours of vacation on May 22; was off May 23; did not show up to work and failed to call out on May 25 and May 26; was off May 27 and 28; took three hours of vacation on May 30 and on May 31; was off June 1 and 2; took vacation on June 3; took vacation on June 6; and was suspended on June 7 through June 21, before she was terminated on June 28. ECF No. 85-3, Ex. 34; ECF No. 85-4, Ex. D.

On June 4, 2019, before Plaintiff's suspension and termination, WPAT confirmed that the lights were still off in Plaintiff's location, but she complained that the lights in the rest of the open workspace bothered her. ECF No. 87-1, ¶ 46; ECF No. 85-2, Ex. Z. WPAT offered Plaintiff a light shield and to allow her to wear a hat and sunglasses, and asked her whether there was another spot on the floor that was acceptable and whether additional break time would help. ECF No. 87-1, ¶ 46; ECF No. 85-2 at Ex. Z. Plaintiff refused these suggestions, indicating that pressure created from wearing a hat and sunglasses caused migraines, that there was no available location on the floor that would relieve her issue with the lighting, and that having to walk into areas with overhead lighting when taking breaks would aggravate her condition. ECF No. 87-1, ¶ 46; ECF No. 85-2, Ex. Z. Plaintiff again stated her issues with headsets with bands that rest on top of her head, noting that her old one went behind her head and the one she was now assigned was too heavy and had poor sound quality, and she requested a speakerphone. ECF No. 85-2, Ex. Z. WPAT told her that

they would look into available ergonomic devices and contact her. ECF No. 87-1, ¶ 46; ECF No. 85-2, Ex. Z. Between June 5 and 10, WPAT continued to discuss Plaintiff's request for a different headset, and Plaintiff provided information to WPAT about her preferred headset. ECF No. 87-1, ¶ 47; ECF No. 85-2, Ex. AA.

On or around June 7, 2019, Robinson was conducting routine reviews of her team's calls and discovered a call where Plaintiff remained silent until the caller hung up. ECF No. 87-2, ¶ 13. Robinson investigated the matter further and identified 27 instances on June 4 and 5 in which the computer system Plaintiff used accepted a call and Plaintiff remained silent on the line until the Verizon technician on the other side was forced to hang up and call again for help. ECF No. 87-2, ¶ 14; No. 85-4, Exs. J, K. Plaintiff's actions, or lack thereof, resulted in delays for Verizon customers. ECF No. 87-2, ¶ 14. The recordings of the calls and the contemporaneous activity on Plaintiff's computer screen demonstrate that Plaintiff was aware of the calls but made no attempt to help the callers or notify her supervisor. ECF No. 87-2, ¶ 15; No. 85-4, Exs. J, L. Callers repeatedly said "Hello?" while Plaintiff sat silently. ECF No. 87-2, ¶ 15; No. 85-4, Ex. L. One caller asked, "Are you just sitting there listening to me?" while Plaintiff remained silent and failed to assist. ECF No. 87-2, ¶ 15; No. 85-4, Ex. L. During one of the calls, Plaintiff stayed silent on the line for over 18 minutes and muted her microphone. ECF No. 87-2, ¶ 15; No. 85-4, Exs. J, L.

On June 7, 2019, Robinson and Miller interviewed Plaintiff, with her union representative present, to ask why she failed to answer the calls. ECF No. 87-2, ¶ 16; No. 85-4, Ex. M. Plaintiff initially denied having knowledge of the calls but then explained that she was not taking the calls because her headset was not working properly. ECF No. 87-2, ¶ 16; No. 85-4 at Ex. M. Robinson asked whether she could make outgoing calls, which required use of the headset, and Plaintiff admitted that she could. ECF No. 87-2, ¶ 16; No. 85-4, Ex. M. Following that conversation,

Robinson indefinitely suspended Plaintiff pending further investigation. ECF No. 87-2, ¶ 16; ECF No. 85-4, Ex. M.

Robinson reported the issue to her manager, Michele Dorn, who reviewed the call logs, investigation notes, and recordings of the 27 calls. ECF No. 87-2, ¶ 17; ECF No. 84-8 (Def. Ex. 5, Dorn Dep.) at 20:13–27:1. Dorn then reported the issue and her findings to the Director of the Silver Spring location, Marcus Wynn. ECF No. 84-8 at 26:1–27:1. Wynn reviewed the information from the investigation and made the decision to terminate Plaintiff's employment. ECF No. 84-9 (Def. Ex. 6, Wynn Dep.) at 14:10–16:5, 23:6–13, 26:8–39:16.

Verizon terminated Plaintiff effective June 28, 2019. ECF No. 85-3 at Ex. 34. At that time, Wynn, Dorn, and Robinson were not aware that Plaintiff had made an ethics complaint against Robinson or filed an EEOC charge alleging workplace discrimination. ECF No. 84-7 at 22:10–26:16, 25:4–31:14, 42:13–45:17, 59:9–60:3, 63:8–64–11, 65:15–66:5 (Yamala Robinson); ECF No. 84-8 at 19:1–20:12 (Michele Dorn); ECF No. 84-9 at 20:10–23:5 (Marcus Wynn).

### B.  Procedural Background

Plaintiff filed her initial Complaint in this Court on June 23, 2022, ECF No. 1, and filed an Amended Complaint on August 10, 2022, ECF No. 8. Verizon filed an answer, ECF No. 10, and the parties conducted discovery. Verizon filed a Motion for Summary Judgment on February 12, 2025. ECF No. 84. Plaintiff filed her response on March 17, 2025, ECF No. 90, and Verizon filed a reply, ECF No. 94.

Plaintiff's Amended Complaint alleges three counts for violations of the ADA, one of which also alleges a violation of Title VII. ECF No. 8-1. Count I alleges a failure to accommodate, *id.* ¶¶ 84–110; Count II alleges retaliation, *id.* ¶¶ 111–43; and Count III alleges a hostile work environment in violation of both the ADA and Title VII, *id.* ¶¶ 144–84. She seeks monetary relief,

including back pay, front pay, compensatory damages, punitive damages, and an award of attorney's fees. *Id.* at 20–21.

On April 1, 2025, Plaintiff filed three motions: (1) a motion for an extension of time to file sealed and unsealed exhibits in opposition to Verizon's motion for summary judgment, ECF No. 95; (2) a motion for leave to file exhibits that had been inadvertently omitted from Plaintiff's response in opposition to Verizon's summary judgment motion, ECF No. 96; and (3) a sealed motion to seal exhibits mistakenly excluded from Plaintiff's response in opposition to summary judgment, ECF No. 97. Verizon opposed the first two motions, ECF Nos. 98, 99, and Plaintiff replied, ECF Nos. 100, 101.

## II.    PLAINTIFF'S MOTIONS

Two of Plaintiff's three pending motions are contested: her motion for an extension of time to file sealed and unsealed exhibits in opposition to Verizon's motion for summary judgment, ECF No. 95; and her motion for leave to file exhibits that had been inadvertently omitted from her response in opposition to Verizon's summary judgment motion, ECF No. 96.

Rule 6(b)(1) of the Federal Rules of Civil Procedure provides that a court "may, for good cause, extend the time" in which "an act may or must be done" "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Findings of good cause and excusable neglect are "within the Court's discretion." *Lewis v. Prince George's Cnty. Bd. of Educ.*, Civ. No. JKB-21-2720, 2023 WL 4551866, at *5 (D. Md. July 13, 2023). Diligence is the "touchstone" of the good cause requirement. *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020). Courts are "permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Lewis*, 2023 WL 4551866, at *5 (quoting *Pioneer Inv. Servs. Co. v.*

*Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). "To ascertain whether a delay in filing is excusable, courts must consider 'all relevant circumstances surrounding the party's omission.'" *Dwonzyk v. Balt. Cnty.*, 328 F. Supp. 2d 572, 577 (D. Md. 2004) (quoting *Pioneer*, 507 U.S. at 395). "The factors to be considered in determining whether there is good cause or 'excusable neglect'[] include the 'danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith.'" *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768–69 (D. Md. 2010) (citing *Pioneer*, 507 U.S. at 395) (footnote omitted).

Plaintiff's motion for an extension of time, ECF No. 95, asks the Court to accept the late filing of exhibits she intended to attach to her opposition brief, which were filed on March 17, 2025—one business day after the opposition brief was due and was filed. Plaintiff's counsel explains that he experienced technical issues while attempting to file the exhibits after hours on March 14—the date the opposition was due. Notably, Plaintiff did not request this extension of time at the time her counsel experienced the technical issues on March 14 or when counsel eventually filed the exhibits on March 17. Her motion for an extension of time came about two weeks later. Plaintiff, in an attempt to explain the late timing of her motion, highlights the fact that Verizon's counsel did not lodge an objection to her late filing of the exhibits when her counsel timely notified Verizon's counsel about the technical issues. While the Court finds this explanation less than satisfactory, the filing of the exhibits was only delayed by one business day and that delay did not impose any substantial prejudice upon Verizon. The Court finds good cause to grant *nunc pro tunc* the requested extension of time to file the slightly delayed exhibits.

Plaintiff's motion to supplement the evidentiary record with previously omitted exhibits, ECF No. 96, is a different matter. In that motion, Plaintiff asks to supplement the record with

exhibits she did not attach to her opposition brief and did not file before Verizon filed its reply in support of its summary judgment motion. Plaintiff points out that these inadvertently omitted exhibits are cited in her opposition brief and at least some of them were produced by Verizon in discovery. But even assuming that Verizon was successful in guessing what documents Plaintiff cited, the failure to attach the exhibits required Verizon's counsel to incur additional time and expense to identify and locate those documents. Moreover, Plaintiff's counsel's explanation for his failure to attach the omitted exhibits is plainly insufficient. Counsel claims that his omission of the exhibits was "largely due" to the technical issues he encountered when filing the opposition brief on March 14. But these technical issues were resolved on March 17, and Plaintiff successfully filed sets of sealed and unsealed exhibits on that date. The inadvertently omitted exhibits were not among them. Plaintiff did not seek to file the omitted exhibits until April 1. The Court can only conclude that the failure to include the omitted exhibits is owed to mere inadvertence and counsel's lack of diligence in ensuring that the sets of exhibits filed on March 17 were complete. Plaintiff's request to file the exhibits after the close of briefing Verizon's summary judgment motion is not supported by good cause and must be denied.

Plaintiff's motion to seal, ECF No. 97, is not opposed and shall be granted.[3]

Accordingly, Plaintiff's motion for an extension of time, ECF No. 95, shall be granted *nunc pro tunc*; her motion to supplement, ECF No. 96, shall be denied; and her motion to seal, ECF No. 97, shall be granted.

---

[3] The Court notes that the motion does not offer any justification for sealing, as required by Local Rule 105.11. However, review of the documents reflects sensitive communications and materials internal to Verizon that the parties designated as confidential in discovery. These records are not part of the record the Court has considered in deciding Verizon's summary judgment motion. Therefore, sealing need only be justified by "countervailing interests" that "heavily outweigh the public interests in access." *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). The Court finds that the parties' interest in maintaining confidentiality of these exhibits sufficient to overcome the presumption in favor of access to court records.

III.    **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In its motion for summary judgment, Verizon argues that it is entitled to judgment as a matter of law on all claims asserted in Plaintiff's Amended Complaint. For reasons explained below, the Court agrees and shall enter summary judgment in favor of Verizon.

### A. Standard of Review

A court may grant a party's summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986) (emphasis removed). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)), but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts. *Anderson*, 477 U.S. at 249, 255.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citing *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522

(4th Cir. 2003)). The burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Bouchat*, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e)).

### B. Failure to Accommodate (Count I)

In Count I of the Amended Complaint, Plaintiff alleges that Verizon failed to effectively accommodate her by refusing requests that she sit in a private office or work from home, and by failing to restrict her exposure to lighting and failing to provide her with her preferred telephone headset, among other things. ECF No. 8-1. In her opposition brief, however, Plaintiff does not dispute that Verizon provided her with various accommodations throughout her employment. *See* ECF No 90-1 at 18. Her argument in opposition to granting Verizon summary judgment on Count I focuses exclusively on Verizon's alleged failure to accommodate her by providing her with the type of telephone headset she preferred.

Verizon argues, first, that it is entitled to summary judgment on Count I because Plaintiff is not a "qualified individual" under the ADA. ECF No. 84-1 at 18. Second, Verizon argues that, even if Plaintiff was a "qualified individual," her claim for failure to accommodate fails as a matter of law because Verizon reasonably accommodated her. *Id.* at 23–25.

Title II of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer.]" 42 U.S.C. § 12112(b)(5)(A); *see also Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013). Reasonable

accommodations may include workplace modifications "like 'job restructuring, part-time or modified work schedules, reassignment to a vacant position . . . and other similar accommodations.'" *Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 166 (4th Cir. 2024) (quoting 42 U.S.C. § 12111(9)(B)). "Significantly, the reasonableness of an accommodation is a fact-specific inquiry." *Gagnon v. Bd. of Educ. of Montgomery Cnty.*, 760 F. Supp. 3d 359, 371–72 (D. Md. 2024) (citing *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994)). "To determine whether an accommodation is reasonable, a factfinder considers whether the proposed accommodation is 'feasible or plausible.'" *Id.* at 372 (quoting *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 414 (4th Cir. 2015)).

A "qualified individual" is defined in the ADA as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "If the plaintiff cannot perform the essential functions of the job, with or without a reasonable accommodation, then she is not a 'qualified individual' under the ADA and therefore has no legal entitlement to an accommodation." *Tartaro-McGowan*, 91 F.4th at 165 (quoting 42 U.S.C. §§ 12111(8), 12112(b)(5)(A)). To determine whether Plaintiff was "qualified" for her position, the Court must determine "(1) whether she could 'perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue,' and (2) if not, whether 'any reasonable accommodation by the employer would enable [her] to perform those functions.'" *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cali.*, 31 F.3d 209, 213 (4th Cir. 1994) (alteration in original) (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393–94 (5th Cir. 1993)). "Plaintiff bears the burden of demonstrating that she could perform the essential functions of her job with reasonable accommodation." *Id.*

ADA regulations defining "reasonable accommodation" provide that employers may be required "to initiate an informal, interactive process with the individual with a disability in need of the accommodation[]" in order "[t]o determine the appropriate reasonable accommodation . . . ." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346 (4th Cir. 2013) (quoting 29 C.F.R. § 1630.2(o)(3)). "The duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability." *Id.* at 346–47. "To survive summary judgment on such a claim under the ADA, a plaintiff must show (i) she was disabled, (ii) the employer had notice of her disability, (iii) she could perform the essential functions of her position with a reasonable accommodation, and (iv) the employer refused to make such accommodation." *Tartaro-McGowan*, 91 F.4th at 165 (quoting *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 378 (4th Cir. 2022)).

Plaintiff's failure-to-accommodate claims in Count I fail as a matter of law. First, Plaintiff cannot show that Verizon "refused" to make reasonable accommodations for her disability. *Tartaro-McGowan*, 91 F.4th at 165 (quoting *Cowgill*, 41 F.4th at 378). Verizon was consistently responsive to Plaintiff's requests for accommodation and regularly accommodated her. The accommodations Verizon provided included installation of light filters in the areas where Plaintiff worked, installation of anti-glare screens on Plaintiff's computer monitors, and granting leaves of absence. These accommodations were provided to Plaintiff despite her failure to engage in the interactive process with Verizon to determine what accommodations would be reasonable. Specifically, in 2017, Plaintiff repeatedly failed to cooperate in Verizon's efforts to obtain a medical authorization form, which would have informed Verizon's efforts to accommodate Plaintiff's disability. For each instance in which Verizon declined to provide accommodations

22

requested for Plaintiff, evidence in the record establishes that the requested accommodation was not feasible and therefore unreasonable. For example, when, in August 2017, Plaintiff asked to work from home, in a private office, or in a space where the lights could be turned off, Verizon determined that none of those accommodations were feasible. Work in a private office and work from home were not feasible due to the collaborative nature of Plaintiff's work, and the lights could not be turned off in Plaintiff's workspace at that time because the entire floor would be affected. Through further discussion, Verizon eventually placed Plaintiff at a workstation in the darkest area of the floor, where the overhead lights were turned off. However, no private office was available at that time, and allowing Plaintiff to work from home remained non-feasible due to the collaborative nature of Plaintiff's position.

In her opposition to Verizon's summary judgment motion, Plaintiff focuses on Verizon's failure to provide her a telephone headset with a band extending behind her head rather than over her head after, as part of Robinson's team, Plaintiff was reassigned to Verizon's facility in Silver Spring. Notably, Verizon did provide Plaintiff with her preferred type of headset when she worked in Ashburn. But this headset was incompatible with the computerized communications system in Silver Spring. The headset Plaintiff was assigned in Silver Spring had a band that extended on top of her head. On May 17, 2019, Plaintiff requested a different headset, and WPAT engaged in an interactive process with her to identify and order a headset configured to her preference that was compatible with the computer system. This effort was ongoing at the time when Plaintiff was suspended and then terminated for failing to answer 27 calls from Verizon technicians in the field on June 4 and 5, 2019. In its totality, the record lends no support for the proposition that Verizon refused or denied Plaintiff any reasonable accommodation.

Even if there was evidence to show that Verizon failed to engage in an interactive process concerning her request for a different headset or otherwise refused Plaintiff this accommodation, Plaintiff identifies no evidence in the record to demonstrate that this accommodation would have enabled her to "perform the essential functions of her position . . . ." *Tartaro-McGowan*, 91 F.4th at 165 (quoting *Cowgill*, 41 F.4th at 378). Evidence in the record shows that, even after Plaintiff was provided her preferred type of headset while assigned to work in Ashburn, she went out on STD leave from July 2016 through May 2017 due to the inability to perform her work as a result of her medical condition. IMEs performed during this period indicated that Plaintiff could not perform work as a COT, even with restrictions and accommodations. Plaintiff experienced migraines unexpectedly, at least one to three times per month, and could not perform work tasks when experiencing a migraine. When Plaintiff returned to work in June 2017 to enter a new position contingent upon successful training and testing, Plaintiff had difficulty completing her assessments despite accommodations, ultimately failed her assessments, and was disqualified from the new position. In an accommodation request form completed in August 2017, a medical provider stated that Plaintiff would require one to three days of leave whenever she got a migraine, which could occur up to once per week. ECF No. 85-3, Ex. 6. Plaintiff went out on SPD leave again and took additional time off from September 2017 through November 2017.

When she returned to work in November, Plaintiff failed to report to her workstation or to her supervisor and failed to comply with a direct order from her supervisor to perform her work, which resulted in a three-day suspension. *Id.*, Ex. 9. Before the suspension began, Plaintiff failed another assessment for the new COT position, despite accommodations. ECF No. 85-2, Exs. P, U. Plaintiff requested another leave of absence, citing problems with the light filters and anti-glare computer screen she had been provided. ECF No. 85-2, Ex. O. In response, WPAT asked that

Plaintiff complete a formal request for accommodations and, at the same time, began engaging Plaintiff in an interactive process to improve her accommodations. *Id.* Upon her return to work following her suspension, Plaintiff again failed to follow direct orders to perform work tasks, even with specific instructions on how to perform the work. ECF No. 85-3, Ex. 14. She claimed that the computer screen was too blurry. *Id.* Plaintiff was suspended for one day. ECF No. 85-2, Ex. R. When she returned to work again, Plaintiff again failed to perform work as directed, citing difficulty with her computer screen, and was suspended for 11 days. ECF No. 87-1, ¶ 31. After Plaintiff returned to work, she failed to perform work again, citing an issue with "the light," and was suspended again with a final warning that future refusals to work could result in termination. ECF No. 85-2, Ex. T; ECF No. 85-3, Ex. 16. Plaintiff was also advised that her formal request for accommodations was closed due to her lack of cooperation in failing to provide a medical authorization form. ECF No. 85-3, Ex. 11; ECF No. 84-5 at 73:13–76:3.

Verizon continued to engage with Plaintiff about her accommodations, in consideration of her refusal to perform her work duties, and sought information from Plaintiff's medical provider. ECF No. 85-3, Exs. 12, 13. In January 2018, Plaintiff's provider suggested that Plaintiff be permitted to work from home or work in a closed office space and, in addition, that she be permitted one to three days of leave each time she experienced a migraine, which could happen one to three times per month. ECF No. 87-1, ¶ 34. None of these suggested accommodations were feasible or consistent with the essential functions of Plaintiff's position, given the collaborative nature of her work. Plaintiff's year-end evaluation for 2017 reflected that Plaintiff appeared for work only 15 days that year and had refused to perform any work on several days she appeared. ECF No. 85-2, Ex. U. She received an overall performance rating of "Improvement Needed." *Id.*

Plaintiff was scheduled to return to work on January 17, 2018, but took a leave of absence until March 2018 and then took more time off through April 2018, before going out on STD leave again through March 2019. ECF No. 85-3, Exs. 18, 21, 22; ECF No. 87-1, ¶ 38; ECF No. 91-14; ECF No. 91-18. In March 2019, Plaintiff returned to work on a reduced work schedule of partial days, three days per week, and with approval for several accommodations. Verizon could not grant blanket approval for frequent unscheduled absences because Plaintiff's presence at work was an essential function of her position. ECF No. 85-3 at Ex. 26. Instead of returning to work in March 2019 as scheduled, Plaintiff took vacation days until the middle of April 2019. Thereafter, even while on a reduced schedule, Plaintiff still continued to miss work days, for various reasons, including a suspension for refusing to provide contact information to her supervisor, vacation days, and time off due to illness. Plaintiff continued to request accommodations, and Verizon continued to engage with her and her supervisor about Plaintiff's requests. Once Plaintiff was placed on a full-time schedule, she failed to show up for work and did so without calling out, on several days. Even after Plaintiff's supervisor confirmed with Plaintiff that the medical restriction on her schedule had ended and reminded her of the proper procedure for calling out of work, Plaintiff persisted in refusing to appear for work and refused to call out as required, vaguely citing her disability as the reason. On other days, Plaintiff used vacation time to miss work. During this period, on days she appeared for work, Verizon continued to accommodate her condition by permitting her to work in an area with the lights off and offering other accommodations, some of which Plaintiff refused because she claimed they aggravated her condition. In June 2017, Plaintiff was suspended and then terminated after failing to perform essential functions of her position when she ignored 27 calls from technicians in the field over the course of two work days.

The record summarized above, viewed in the light most favorable to Plaintiff, leaves no genuine dispute that Plaintiff was not capable of performing the essential functions of her position—with or without reasonable accommodation. There is no genuine dispute that Plaintiff's position required regular attendance as an essential function and required Plaintiff to comply with proper call-out procedures to seek approval of any absences from work. In sum, the record is clear that Plaintiff's medical condition rendered her incapable of keeping a regular work schedule without taking unscheduled absences, and Verizon could not reasonably accommodate Plaintiff's apparent need to take such absences, as her in-office presence was an essential function of her position. And there is no evidence in the record to suggest that providing Plaintiff with her preferred headset would have improved her attendance. Therefore, Plaintiff cannot show that she was a "qualified individual" under the ADA, *Tartaro-McGowan*, 91 F.4th at 165 (quoting 42 U.S.C. §§ 12111(8), 12112(b)(5)(A)), or that "she could perform the essential functions of her position with a reasonable accommodation," *id.* (quoting *Cowgill*, 41 F.4th at 378).

This conclusion is supported by Fourth Circuit precedent. The plaintiff in *Tyndall* was employed as an instructor in a medical assisting training program at a business college but suffered from lupus and missed a substantial amount of time from work. 31 F.3d at 211–12. There was no dispute that the employer never refused any request the plaintiff for an accommodation—until she requested a leave of absence that would cause her "to miss the beginning of an instructional cycle for the third time in a row." *Id.* at 212. When the plaintiff insisted on her requested absence, the department head suggested that she resign, and the plaintiff signed a report reflecting a "mutual" separation from employment. *Id.* The plaintiff then sued the employer for disability discrimination, and the district court granted summary judgment in favor of the employer. *Id.* On appeal, the Fourth Circuit determined that the plaintiff was not a "qualified individual with a disability"

because her "attendance problems rendered her unable to fulfill the essential functions of her job, and because these problems occurred even with [the employer's] more than reasonable accommodations for her own disability[.]" *Id.* at 214. The court explained that, "[i]n addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis." *Id.* at 213. "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Id.* Even in recent years, the Fourth Circuit has consistently reaffirmed these principles. *See, e.g.*, *Hannah P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019) (affirming summary judgment in favor of former employer on Rehabilitation Act claim where "Appellee had a reasonable belief that [appellant's] ability to perform the essential functions of her job was impaired by her repeated issues with attendance and timely reporting"); *McKinney v. Cleveland Cnty. Bd. of Educ.*, No. 22-1697, 2023 WL 4637115, at *4 (4th Cir. July 20, 2023) (affirming dismissal of ADA claim where "Appellant did not regularly come to work at the time she was terminated, and thus, was not a qualified individual as defined by the ADA").

Plaintiff points to the several instances in which Verizon permitted her absences from work, arguing that her in-office presence was not an essential requirement of her position. The Fourth Circuit has rejected this argument in similar circumstances. The plaintiff in *Perdue v. Sanofi-Aventis U.S., LLC* requested a job-sharing arrangement with another employee as an accommodation upon his return from a period of STD leave, but the defendant employer, Sanofi-Aventis ("Sanofi"), refused this proposal. 999 F.3d 954, 957–58 (4th Cir. 2021). After Perdue applied for long-term disability, Sanofi terminated her employment, having determined that it could not grant her "'an indefinite leave of absence' and there were "no other accommodations that would enable [her] to perform the essential functions of [her] job.'" *Id.* at 958. Perdue filed

suit alleging, among other claims, failure to accommodate in violation of the ADA. *Id.* After the district court granted summary judgment in favor of Sanofi, the plaintiff appealed. *Id.* The Fourth Circuit determined that the ADA did not require Sanofi to accept Perdue's job-sharing proposal. *Id.* at 961–62. Perdue argued, among other things, that Sanofi could have permitted the job share because it had previously "permitted [Perdue] to job share as she worked her way back from her initial diagnosis and brain surgery[.]" *Id.* at 951. The court rejected this argument, concluding that Sanofi's prior decision did not require it "to do the same thing" when Perdue proposed a new job share. *Id.* The court further stated, "We applaud Sanofi for going beyond its legal obligation under the ADA in accommodating Perdue's recovery. And Sanofi appears willing to consider flexible-employment situations. But its generosity and overall flexibility does not raise the legal standard." *Id.*

Similarly, here, Verizon's accommodation of Plaintiff's many absences—whether scheduled, excused, or unscheduled and unexcused—did not require it to accept Plaintiff's pattern of unexcused absences after her return to a full-time schedule in May 2019. Verizon is not to be penalized for its willingness to accommodate Plaintiff beyond what the ADA requires. Plaintiff cites no authority for the proposition that permitting several days of unnoticed and unscheduled absences from work within the span of a few weeks would be a "reasonable accommodation" Verizon was required to provide under that ADA.

In sum, there is no genuine dispute that Plaintiff was not "willing and able" to appear for work as scheduled on any consistent basis, to perform the work assigned to her, or to follow call-out procedures to seek approval for unscheduled absences. *Tyndall*, 31 F.3d at 213. Her inability to satisfy the attendance requirements of her position, which, as explained to her, was an "essential

function of [her] job[,]" ECF No. 85-3, Ex. 26, rendered her non-qualified under the ADA. Therefore, Verizon is entitled to summary judgment on Count I.

### C. Retaliation (Count II)

In Count II, Plaintiff alleges that Verizon retaliated against her when it terminated her following her EEOC complaint and that Verizon's proffered reason for termination is mere pretext. ECF No. 8-1, ¶¶ 141–43. Verizon argues that Count II fails as a matter of law because (1) Plaintiff cannot show a causal connection between her protected activities and any adverse action by Verizon; and (2) Verizon terminated Plaintiff for legitimate, non-retaliatory reasons. ECF No. 84-1 at 26–28.

The ADA bars employers from retaliating against employees for seeking its statutory protections. 42 U.S.C. §§ 12203(a)–(b). To establish a prima facie case of retaliation under the ADA, a plaintiff must show that "(1) she has engaged in protected conduct; (2) she suffered an adverse action after engaging in the protected conduct; and (3) there was a causal link between the protected conduct and the adverse action." *Laird v. Fairfax Cnty.*, 978 F.3d 887, 893 n.4 (4th Cir. 2020) (citing *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006)). A request for accommodation is a protected activity under the ADA. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 577 (4th Cir. 2015). Once the plaintiff establishes a prima facie case of retaliation, "[t]he 'employer then has the burden to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions.'" *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 174 (4th Cir. 2023) (quoting *Jacobs*, 780 F.3d at 578). "The burden then shifts back to [the plaintiff] to show that the proffered reason is pretext." *Id.* (quoting *Jacobs*, 780 F.3d at 578). "Importantly, [the plaintiff] 'always bears the ultimate burden of persuading the trier of fact that she was the victim of retaliation.'" *Id.* (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001)). The

plaintiff must show that the protected conduct was the "but for" cause of the adverse action. *Staley v. Gruenberg*, 575 F. App'x 153, 156 (4th Cir. 2014).

Assuming, without deciding, that Plaintiff can establish a prima face case of retaliation, Verizon has produced a legitimate, nonretaliatory reason for Plaintiff's suspension and termination. Verizon determined that Plaintiff violated the workplace code of conduct by neglecting 27 calls from Verizon technicians on June 4 and 5, 2019. Therefore, Plaintiff's "claim can survive summary judgment only if she forecasts sufficient evidence that would allow a jury to reasonably infer that [Verizon's] stated justification was pretextual." *Tartaro-McGowan*, 91 F.4th at 173 (citing *Jacobs*, 780 F.3d at 575–76).

Plaintiff fails to present any evidence that her failure to respond to the 27 calls was a pretext for retaliation. When Robinson, Plaintiff's supervisor, discovered her misconduct, she escalated the matter to her manager Dorn, who reviewed the call recordings before reporting the misconduct to Wynn, the Director of the Silver Spring facility, and Wynn decided to terminate Plaintiff's employment.

Plaintiff points to her dissatisfaction with her headset to challenge the legitimate reason offered for her termination. But Plaintiff admitted that her headset was operating properly when she made outgoing calls on it during the same period in which she failed to respond to the 27 calls. Plaintiff's complaint about the configuration of her headset may explain why she preferred not to use it and failed to engage the 27 calls she received from Verizon technicians, but it is not evidence of pretext. Even if Plaintiff's problem with her headset was related to her medical condition, there is no evidence to suggest that Verizon terminated her employment because she complained about the headset. "The law is well settled that the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a

disability." *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 429 (4th Cir. 1999); *see also Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 n.3 (4th Cir. 1997) ("[M]isconduct—even misconduct related to a disability—is not itself a disability, and an employer is free to fire an employee on that basis."); *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 305 (4th Cir. 2016) ("[T]he ADA does not require an employer to simply ignore an employee's blatant and persistent misconduct, even where that behavior is potentially tied to a medical condition"); *Darcangelo v. Verizon Maryland, Inc.*, 189 F. App'x 217, 219 (4th Cir. 2006) (citing *Jones*, 192 F.3d at 429) ("[T]he ADA does not require Verizon to subject its employees to [plaintiff's] abusive behavior . . . even if that behavior was related to her bipolar disorder").[4]

In sum, Plaintiff cannot establish that the legitimate reason for her termination was a pretext for retaliation. Verizon is entitled to summary judgment on Count II.

### D. Hostile Work Environment (Count III)

In Count III, Plaintiff alleges that she was subject to a hostile work environment in violation of the ADA based on the conduct of Robinson and Miller.[5] ECF No. 8-1. Plaintiff contends that she endured: (1) reprimands and suspensions; (2) the failure to provide her with a proper headset; (3) calls on days that she was not scheduled to work; and (4) monitoring or following through the workplace. Verizon argues that Count III fails as a matter of law because Plaintiff is not a

---

[4] Plaintiff identifies "Performance Excellence" points she received from Robinson on May 15 and 30, 2019, as "contradictory evidence" indicative of pretext. Robinson explains, however, that these incentive points were not based on performance evaluations but were awarded to every member of her team as a gesture to "welcome" them upon the team's transfer to Silver Spring. ECF No. 94-2, ¶ 4.

[5] Plaintiff mentions Title VII in both her Amended Complaint and opposition to Verizon's summary judgment motion. *See* ECF No. 8-1 at 16; ECF No. 90-1 at 26–27. To the extent Plaintiff intended to bring a claim under Title VII, that claim must be dismissed. Her EEOC charges from January 17, 2018, and August 15, 2019, do not make any reference to Title VII or allege discrimination based on any Title VII protected status. ECF 64-1 at 3-4, 10–12. Therefore, the Court must dismiss any Title VII claim for failure to exhaust administrative remedies. *Sloop*, 198 F.3d at 149.

"qualified" individual under the ADA and she cannot show that she was subjected to severe and pervasive harassment. ECF No. 84-1 at 28–30.

"To establish a hostile work environment claim under the ADA, a plaintiff must show that: '(1) [she] is a qualified individual with a disability; (2) [she] was subjected to unwelcome harassment; (3) the harassment was based on [her] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.'" *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 367 (4th Cir. 2022) (quoting *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001)). Although the "unwelcome harassment" element is subjective, "the rest of the test is made up of objective components based on a 'reasonable [person]' standard." *Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The plaintiff must show that "but for" her disability, she would not have been subjected to the discriminatory harassment. *Id.* Further, the harassment must be so severe or pervasive that the workplace is "permeated with discriminatory intimidation, ridicule, and insult." *Id.* (quoting *Harris*, 510 U.S. at 21). "To show that conduct was sufficiently severe or pervasive to support a hostile work environment claim, a plaintiff 'must demonstrate not only that he subjectively perceived his workplace environment as hostile, but also that a reasonable person would so perceive it, i.e., that it was objectively hostile." *Jessup*, 23 F.4th at 368 (quoting *Fox*, 247 F.3d at 178).

First, Plaintiff's hostile work environment claim fails as a matter of law because, as explained in Part III.B *supra*, she cannot show that she could perform essential functions of her COT position, with or without reasonable accommodations. Specifically, Plaintiff cannot show that she was capable of regular in-person attendance at the workplace as scheduled, that she could

perform the tasks of a COT on any consistent basis, or that she could consistently comply with call-out procedures when she needed to be absent from work. Therefore, there is no genuine dispute that Plaintiff was not a "qualified individual" under the ADA.

Second, even if Plaintiff was a qualified individual under the ADA, the conduct by Verizon's managers that she claims amounted to harassment does not rise to the level of objectively hostile treatment that was sufficiently severe or pervasive to support a claim for hostile work environment. "[P]laintiffs must clear a high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). "'[T]he standard for proving an abusive work environment is intended to be a very high one' . . . because [it] is designed to 'filter out complaints attacking "the ordinary tribulations of the workplace" . . . .'" *Wang v. Metro. Life Ins. Co.*, 334 F. Supp. 2d 853, 864 (D. Md. 2004) (quoting *Jackson v. State of Maryland*, 171 F. Supp. 2d 532, 542 (D. Md. 2001); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "To determine whether a reasonable person would perceive an environment as hostile, a court considers 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Jessup*, 23 F.4th at 368 (quoting *Fox*, 247 F.3d at 178). "[A]n isolated incident of harassment, if extremely serious, can create a hostile work environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 268 (4th Cir. 2015) (en banc). "But evidence of mere 'rude treatment' or 'callous behavior' ordinarily does not suffice." *Jessup*, 23 F.4th at 368 (quoting *Sunbelt Rentals, Inc.*, 521 F.3d at 315–16). Mere disagreement "with the management style or decisions of those who supervised" the plaintiff is not actionable harassment. *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 601 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012), *accord Wooten v. Univ. of Md., Balt.*, 733 F. Supp. 3d 402, 428 (D. Md. 2024).

Plaintiff's hostile work environment claim in this case is supported only by a series of supervisory actions and decisions of Verizon managers spread out over the course of three years. The record simply does not show these actions to have been severe, pervasive, or discriminatory in nature. First, the challenged reprimands and suspensions mainly resulted from Plaintiff's failure to follow management directives. Such facially legitimate and non-discriminatory disciplinary measures cannot support a claim for hostile work environment. Second, Plaintiff fails to show that any monitoring to which she was subjected in the workplace was based on Plaintiff's disability or was so severe or pervasive that a reasonable person would view it as hostile. Third, Plaintiff states that she received numerous calls and voice messages from Robinson and Miller on days that she was not scheduled to work, but the record only reflects approximately six calls over the span of five days, none of which Plaintiff answered. There was nothing threatening, humiliating, or offensive about these calls, and they were not nearly so frequent as to be reasonably cast as abusive or harassing. Finally, Plaintiff identifies Verizon's failure to provide her with her preferred headset as a form of harassment, but "[s]upervisory inaction with respect to a requested accommodation . . . does not constitute the type of severe and pervasive conduct that would contribute to a hostile work environment." *Thomas v. Coppin State Univ.*, Civ. No. SAG-23-02217, 2024 WL 278352, at *4 n.4 (D. Md. Jan. 25, 2024). Plaintiff fails to show that the challenged management actions and decisions "permeated [her workplace] with discriminatory intimidation, ridicule, and insult." *Pueschel*, 577 F.3d at 565. As Verizon points out in its briefing, Plaintiff was absent from the workplace for large swaths of the three-year period during which she alleges she was subjected to harassment. Taking all of the challenged actions in their totality, and viewing them in the light most favorable to Plaintiff, they amount to nothing more than "ordinary tribulations of the workplace[,]" which "the Supreme Court has made clear are not a proper basis

for a hostile work environment claim." *Wooten*, 733 F. Supp. 3d at 428 (quoting *Wang*, 334 F. Supp. 2d at 864); *see also Faragher*, 524 U.S. at 788.

For the foregoing reasons, Count III fails as a matter of law, and Verizon is entitled to summary judgment on Plaintiff's hostile work environment claims.

## IV.    CONCLUSION

For the foregoing reasons, Verizon's Motion for Summary Judgment, ECF No. 84, will be granted; Plaintiff's Motion for Enlargement and Extension of Time to File Sealed and Unsealed Exhibits, ECF No. 95, will be granted *nunc pro tunc*; Plaintiff's Motion to Supplement Exhibits, ECF No. 96, will be denied; and Plaintiff's Motion to Seal Exhibits, ECF No. 97, will be granted.

A separate Order will follow.

_____
10/28/25
Date

_____
Matthew J. Maddox
United States District Judge